USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/6/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGELO ANTHONY MAYES,

               Plaintiff,

   -v.-

NEW YORK CITY POLICE
DEPARTMENT, et al.,

               Defendants.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION

10 Civ. 1690 (JSR) (JLC)

(Non-ECF Case)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Jed S. Rakoff, U.S.D.J.:**

    Plaintiff Angelo Mayes ("Mayes"), proceeding pro se, brings this suit under the Civil Rights Act, 42 U.S.C. § 1983, alleging deprivation of his constitutional rights by Defendants New York City Police Department, City of New York, and Police Detective Vincent Buscarnera (collectively, "Defendants"). Mayes alleges that Defendants subjected him to false arrest and malicious prosecution in connection with his arrest on March 6, 2006, for attempted robbery and criminal possession of a weapon. Mayes seeks both compensatory and punitive damages. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, I recommend that the Court grant Defendants' motion to dismiss in its entirety.

## I. BACKGROUND

### A.    Factual Background

    Mayes alleges the following facts in his complaint, which are accepted as true for purposes of deciding Defendants' motion. On March 5, 2006, at approximately 11:30 p.m., the

New York City Police Department received a call reporting an attempted robbery on 137th Street between 7th Avenue and Lenox Avenue. (See Second Amended Complaint ("Second Am. Compl.") at Attachment ¶ 1) (Dkt. No. 9).[1] The caller described the robber as an African-American male wearing all black clothing, a black ski mask, and black sunglasses, and carrying a handgun. (Id. at ¶ 2). Police officers investigated the scene that day but found no one fitting that description. (Id. at ¶ 3).

The following day, at approximately 5:30 p.m., defendant Detective Vincent Buscarnera arrived at Mayes's front door and announced himself as an NYPD detective. (Id. at ¶ 4). Detective Buscarnera spoke with Mayes's girlfriend, who told Buscarnera that Mayes was in his bedroom. (Id. at ¶ 5). Detective Buscarnera told Mayes's girlfriend to tell Mayes to emerge from the bedroom with his hands where they could be seen. (Id. at ¶ 6). Mayes emerged from the bedroom, at which point Detective Buscarnera told Mayes that there were allegations pending against him, and that he would explain further at the precinct. (Id. at ¶¶ 9-11). Mayes asked whether he was under arrest, and Detective Buscarnera explained that Mayes was not. (Id. at ¶ 12). Mayes asked whether he and Buscarnera could discuss the allegations in his apartment rather than at the precinct, at which point Detective Buscarnera pushed Mayes into the hallway, handcuffed him, escorted him down the stairs into a squad car, and drove him to the 32nd Precinct. (Id. at ¶ 14-15).

After arriving at the precinct, Detective Buscarnera interrogated Mayes for several hours regarding the alleged attempted robbery. (Id. at ¶ 16). Detective Buscarnera told Mayes that he knew Mayes had committed the attempted robbery, and that he had video footage showing Mayes committing a prior armed robbery. (Id. at ¶ 17). Detective Buscarnera then showed

---

[1] In his second amended complaint, Mayes attached a detailed description of the events giving rise to his claims. This document is cited herein as "Attachment."

Mayes the video footage, which depicted a robbery committed by an individual wearing a black mask. (Id. at ¶ 22). Mayes denied all allegations against him, and again asked whether he was under arrest, to which Detective Buscarnera again responded that he was not. (Id. at ¶ 18-19). Mayes then asked whether he could leave, but Detective Buscarnera refused to allow Mayes to leave the precinct or to make any phone calls until he had completed his investigation. (Id. at ¶ 20-21).

The following day, March 7, 2006, Detective Buscarnera obtained a warrant to search Mayes's apartment. (Id. at ¶ 23). At approximately 5:30 p.m., Detective Buscarnera, along with several other NYPD officers, conducted a search of Mayes's home and recovered a black ski mask, black sunglasses, and several articles of black clothing. Immediately following the recovery of these items, Detective Buscarnera arrested Mayes for various crimes, including attempted robbery in the first degree, pursuant to New York Penal Law § 160.15 (04). (Id. at Ex. 1). On March 2, 2007, a jury acquitted Mayes of all charges against him, and on March 6, 2007, the court officially terminated all pending criminal charges in favor of Mayes. (Id. at Ex. 2).

### B.  Procedural History

Mayes filed his initial complaint pursuant to 42 U.S.C. § 1983 on March 3, 2010, alleging claims of false arrest and malicious prosecution against the NYPD, the City of New York ("City"), and three John Doe defendants. (Dkt. No. 2). Mayes twice amended his complaint, replacing the John Doe defendants with Detective Buscarnera, and adding a more detailed description of the events leading up to his arrest. (Dkt. Nos. 7-9). In his complaint, Mayes alleges that, at the time of his arrest, police had not conducted or initiated an investigation into the crimes alleged against him. (Second Am. Compl. at 3). Mayes claims that Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution, and seeks compensatory damages for the emotional distress he suffered resulting from the criminal proceedings. Mayes also seeks punitive damages against Defendants. (Id. at 5).

On January 4, 2011, Defendants moved to dismiss the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants make three arguments: (1) Mayes's claims are barred by the applicable statute of limitations, (2) Mayes failed to plead a viable municipal liability claim, and (3) the NYPD is not a suable entity. (See Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), dated December 29, 2010 ("Defs.' Mot.")) (Dkt. No. 19). Mayes filed his opposition on March 4, 2011. (Plaintiff's Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl.'s Opp'n)) (Dkt. No. 24). Defendants filed their reply on March 22, 2011. (Dkt. No. 25). On April 7, 2011, after briefing was complete, Mayes filed a letter claiming that he would be unable to present evidence necessary to support his municipal liability claim without discovery. (Dkt. No. 29).[2]

## II. DISCUSSION

### A. Standard of Review

Defendants have moved to dismiss for failure to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. Tellabs, Inv. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Ofori-Tenkorang v. Am. Int'l Group,

---

[2] While the facts alleged in the complaint should be considered in the light most favorable to the plaintiff, Mayes is not entitled to discovery that would support a viable claim prior to the Court's ruling on the motion to dismiss. In order to survive the motion, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 571 (2007)). If the complaint is deficient under this standard, the plaintiff is not entitled to discovery, however limited. Id. at 1954.

4

Inc., 460 F.3d 296, 298 (2d Cir. 2006). The question in resolving a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the complaint is sufficient to "cross the federal court's threshold." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011). The Federal Rules of Civil Procedure generally only require the plaintiff to provide a "short and plain" statement of his claim, not an exposition of his legal argument. Id.; Fed. R. Civ. P. 8(a).

However, the Supreme Court's heightened pleading standard requires the plaintiff to allege facts that support more than a mere possibility of a valid claim. Pursuant to the Supreme Court's ruling in Ashcroft v. Iqbal, the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While the complaint need not provide detailed factual allegations, it must present more than mere labels and conclusions. Twombly, 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Nor will the plaintiff's complaint survive a motion to dismiss if it provides naked assertions devoid of any factual support. Ambrose v. City of New York, 623 F. Supp. 2d 454, 462 (S.D.N.Y. 2009).

In determining whether a complaint has met Iqbal's and Twombly's plausibility standard, the Court must consider all evidence contained within the pleadings, in addition to all documents that are attached to the complaint or incorporated in it by reference. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). The Court may also consider matters of public record, such as court filings and police records. Cortec Indus., Inc. v. Sum Holding L.P., 949 F. 2d 42, 47 (2d Cir. 1991). Finally, because Mayes is proceeding pro se, the Court should hold his pleadings to a less stringent standard than

5

it would require of experienced litigators. Erickson v. Pardus, 551 U.S. 89, 94 (2007). While a pro se plaintiff must still ensure that his complaint meets the plausibility standard in Iqbal and Twombly, the Court may consider the facts set forth in Mayes's opposition to the present motion as support for his claims without converting a motion to dismiss into a motion for summary judgment. See Gil v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of pro se plaintiff's Section 1983 claim, court considered plaintiff's affidavit submitted in opposition to dismissal motion); Lucas v. New York City, 842 F. Supp. 101, 104 & n.2 (S.D.N.Y. 1994) (considering pro se plaintiff's opposition papers in ruling on motion to dismiss); Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) ("The policy reasons favoring liberal construction of pro se pleadings warrant the Court's consideration of the allegations contained in plaintiff's memorandum of law, at least where those allegations are consistent with the allegations in the complaint.").

Having liberally construed Mayes's complaint and his opposition papers, I recommend that the Court grant Defendants' motion.

### B. False Arrest Claims

Mayes's false arrest claims against Defendants should be dismissed, as they are time-barred. The statute of limitations in a Section 1983 suit is the same as that provided by the State for personal injury torts. Wallace v. Kato, 549 U.S. 384, 387 (2007). The parties agree that New York imposes a three-year statute of limitations on personal injury actions, which applies to cases brought under Section 1983. (Defs.' Mot. at 4; Pl.'s Opp'n at 2). See N.Y. C.P.L.R. § 214(5); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). For a false arrest claim, the statute of limitations begins to run when the claimant is arraigned or otherwise subjected to legal process. Wallace, 549 U.S. at 390 (likening a false arrest claim to a false imprisonment claim in

6

tort law, for which the statute of limitations begins to run when the claimant is released from confinement).

Since Mayes was arrested on March 7, 2006, the statute of limitations for any false arrest claims ran on March 7, 2009. Mayes filed his original complaint on March 3, 2010, well after his false arrest claim had expired. Mayes explains this delay by reasoning that any false arrest claim prior to his March 2, 2007 acquittal would have been premature, as he could not then have known the full extent of his injury; thus, he argues that the three-year statute of limitations began to run only after his acquittal. This argument is unpersuasive for two reasons. First, even if the Court accepted Mayes's contention, Mayes's complaint would still fall one day outside the statute of limitations, as the proposed three-year period would have run from March 2, 2007 to March 2, 2010. Second, even if the Court applied the prison mailbox rule and liberally construed the action as commencing on the date Mayes signed the original complaint—January 15, 2010— Mayes's argument for a delayed trigger of the statute of limitations does not comport with case law.[3] The Supreme Court in Wallace v. Kato held that the statute of limitations in a Section 1983 action starts to run when the wrongful act results in damages, regardless of whether the full extent of the injury is then known or predictable. See 549 U.S. at 391. The Court reasoned that without such a rule, "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." Id. As a result, Mayes may not push back the start of the statutory period because he contends he did not know the extent of his injury at the time of his arrest.

---

[3] Because Mayes was incarcerated at the time he filed his suit, he may benefit from the "prison mailbox rule," which provides that a complaint is deemed filed on the day it is handed to the prison officials for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). Although it is not clear when Mayes gave his complaint to prison officials, "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave [it] to prison officials for mailing on the date he signed it." Torres v. Irvin, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998); Johnson v. Coombe, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) (prison mailbox rule applies to Section 1983 actions). Here, therefore, the Court can construe Mayes's complaint as having been filed on January 15, 2010.

Nor can Mayes's false arrest claim be saved by tolling the statute of limitations during the pendency of his criminal proceedings. While the Supreme Court has recognized a rebuttable presumption of equitable tolling in federal cases, the Court has only applied equitable tolling principles in cases where the plaintiff has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the plaintiff has been induced or tricked by the defendant's misconduct into allowing the statute of limitations to expire. See, e.g., Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990). Here, Mayes did not file his original complaint during the statutory period for his false arrest claim, and Mayes has not alleged any facts to suggest that he was tricked into filing his complaint after the statute of limitations had expired. Thus, equitable tolling principles will not save Mayes's false arrest claims from the time bar.

### C. Malicious Prosecution Claims

Mayes's malicious prosecution claims against all Defendants should be dismissed because his claims against Defendant Buscarnera are time-barred and because he fails to properly plead his claims against the City and the NYPD.

#### 1. Mayes's Malicious Prosecution Claim Against Defendant Buscarnera is Barred by the Statute of Limitations

Mayes's malicious prosecution claim against Defendant Buscarnera is time-barred because Mayes did not name Buscarnera as a defendant until after the statute of limitations had expired. New York's three-year statute of limitations for personal injury actions applies to Section 1983 malicious prosecution claims. See Pearl, 296 F.3d at 79. A malicious prosecution claim begins to accrue on the date of favorable termination of the criminal proceedings against the plaintiff. Heck v. Humphrey, 512 U.S. 477, 489-90 (1994). Thus, the statute of limitations for Mayes's malicious prosecution claim began to accrue on March 2, 2007, the date of his

acquittal, and expired three years later on March 2, 2010. Defendant Buscarnera was not named in this action until Mayes filed an amended complaint on May 10, 2010. This date falls outside the statutory period.

While under certain circumstances Rule 15 of the Federal Rules of Civil Procedure allows amended pleadings to relate back to the original filing date for purposes of preserving claims brought outside the statutory period, Mayes's amendment, which replaced the John Doe Defendants with Detective Buscarnera, will not relate back to the original filing date. The Second Circuit generally denies relation back for John Doe substitutions. See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469-70 (2d Cir. 1995) (amendment substituting individual police officers for John Doe defendants was not result of mistake concerning identity of proper defendants, and thus did not relate back to original complaint); Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993). The Advisory Committee Notes for Rule 15(c) provide that the rule cures the problems that arise, for example, when a plaintiff mistakenly sues an agency of the government without knowing that the cause of action requires the plaintiff to sue an individual within the agency. By contrast, if a plaintiff is aware that he must ultimately name an individual agent in the complaint, he is responsible for doing so within the statutory period. Barrow, 66 F.3d at 468-70.

In this case, Mayes was clearly aware that he was required to sue the individual arresting officer, as he used a John Doe label as a temporary substitute for Defendant Buscarnera. And while courts have allowed relation back for John Doe substitutions in circumstances where a plaintiff made an effort to obtain the identity of the officers before the statute of limitations expired, there is no evidence in the record to suggest that Mayes made any attempt to obtain the identity of the officers responsible for his arrest until after the statutory period had passed. Byrd

v. Abate, 964 F. Supp. 140, 146 (S.D.N.Y. 1997) ("To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended."). As a result, the Court should find that Mayes's amended complaint does not relate back to the filing date, thus failing to overcome the three-year statute of limitations bar for the malicious prosecution claim against Detective Buscarnera. While the denial of relation back may lead to harsh results in circumstances where a plaintiff is unable to identify the responsible agents until after the statutory period has run, the rule encourages the early filing of complaints so as to avoid precisely the situation that Mayes has found himself in.

### 2. Mayes Does Not Allege Sufficient Facts to Support a Malicious Prosecution Claim Against the City of New York

Mayes's claims against the City of New York fail because he has not satisfied the requirements to meet the standard for municipal liability as laid out by the Supreme Court in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). A municipality may be held liable for constitutional violations under Section 1983, but may not be held liable for the conduct of an employee solely on the basis of respondeat superior. Id. at 694. In order to succeed on a municipal liability claim, a plaintiff must (1) identify a municipal policy or custom that deprived him of a constitutionally protected right, (2) demonstrate that the municipality acted with the requisite culpability towards the constitutional violation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. Id. at 690. A single incident alleged in a complaint does not suffice to show a municipal policy. See City of Canton v. Harris, 489 U.S. 378, 387 (1989). However, a plaintiff may assert the existence of a municipal policy by demonstrating that there exists, inter alia, (1) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of

the practice to policymaking officials, or (2) a failure by policy makers to train or supervise subordinates. McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 399-400 (S.D.N.Y. 2005), aff'd in part, No. 04-4849-cv, 2007 WL 247728 (2d Cir. Jan. 25, 2007). In order to satisfy the culpability requirement, a plaintiff must show that municipal policymakers affirmatively endorsed said policy, or acted with deliberate indifference toward the existence of said policy. Canton, 489 U.S. at 388. Moreover, a plaintiff cannot prevail on a municipal liability claim "without a finding of a constitutional violation by the persons supervised." Williams v. City of New York, No. 02 Civ. 3693, 2003 WL 22434151, at *9 (S.D.N.Y. Oct. 23, 2003) (citation omitted), aff'd 120 F. App'x 388 (2d Cir. 2005) (summary order); Hartline v. Gallo, 546 F.3d 95, 99-100 (2d Cir. 2008) (pre-requisite to Monell claim is violation of plaintiff's constitutional rights).

In his opposition papers, Mayes contends that Defendant Buscarnera violated his Fourth Amendment rights when he forcibly removed Mayes from his home and detained him, without probable cause, for more than 24 hours. Mayes also asserts that NYPD officers engage in this type of behavior on a regular basis, and provides, as examples, a number of cases, factually similar to his own, in which New York City police officers have violated individuals' constitutional rights in making arrests. (Pl.'s Opp'n at 5).

Mayes's complaint is deficient with respect to this claim for two reasons. As an initial matter, Mayes's claims against the City fail because he lacks the requisite constitutional violation by an individual actor, since the claims against Defendant Buscarnera are time-barred. Second, Mayes' complaint does not provide sufficient factual material to state a plausible claim. Though Mayes's listing of cases in his opposition papers provides the Court with more than mere conclusory allegations of police misconduct, Mayes's listed examples do not provide enough

11

facts to suggest that this practice constituted a "policy" among City officials. See, e.g., McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 704-06 (S.D.N.Y. 1999) (dismissing complaint that provided only conclusory allegations of municipal policy without additional factual support). Nor has Mayes alleged any facts that support his claim that City officials failed to properly train officers in proper arrest procedures. On this claim, Mayes proceeds in a wholly conclusory manner, simply stating that "New York City is liable for the constitutional violations under Monell, for failing to adequately train its officers." (Pl.'s Opp'n at 7) (citations omitted). In the absence of factual support, these conclusory allegations are not sufficient to "nudge [Mayes's] claims across the line from conceivable to plausible." In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570).

Mayes has also failed to demonstrate that the municipality acted with the requisite culpability towards the constitutional violation. Mayes's complaint does not allege, and there is no evidence in his opposition papers to suggest, that municipal policymakers have taken any affirmative actions to endorse the NYPD's alleged constitutional violations.[4] And while Mayes alleges deliberate indifference towards a "widespread policy" by City officials, he does not suggest which officials might be culpable. Without providing a starting point for the culpability analysis, Mayes's municipal liability claim cannot survive a motion to dismiss.

Mayes also has not satisfied the culpability requirement with respect to his allegation that the City failed to train its officers. Inadequate police training may serve as the basis for Section 1983 liability only where the municipality's failure to train its police officers amounts to deliberate indifference to the rights of persons with whom the police come into contact. Canton,

---

[4] Although Mayes claims that prosecutors dishonestly moved forward with false charges against him, the Supreme Court has afforded prosecutors absolute immunity against malicious prosecution claims under Section 1983. Imbler v. Pachtman, 424 U.S. 409, 427 (1976). Thus, the decision to prosecute the criminal charges against Mayes does not constitute affirmative endorsement of a municipal policy for purposes of holding the municipality liable.

12

489 U.S. at 388. Mayes himself alleges that the City is responsible for "negligent failure to train defendant Buscarnera." (Pl.'s Opp'n at 5). Even if the City acted negligently in its failure to train its officers, this would not rise to the level of "deliberate indifference" as required by Canton. Because Mayes's municipal liability claim also fails to satisfy the culpability requirement, it cannot survive the motion to dismiss.

Because Mayes has not plausibly alleged that City officials maintained a policy or custom that deprived him of a constitutionally protected right, the Court need not address the causality requirement. Absent plausible allegations of a municipal policy, Mayes's malicious prosecution claims against the City cannot succeed.

### 3. Mayes's Malicious Prosecution Claims Against the NYPD are Barred Because the NYPD is Not a Suable Entity

Mayes's claims against the NYPD should be dismissed because the NYPD is not a suable entity. The New York City Charter § 396 (2010) instructs that, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." The NYPD is not a suable legal entity, and thus all claims against the agency should be dismissed. Jenkins v. City of New York, 478 F.3d 76, 96 n.19 (2d Cir. 2007) (NYPD deemed non-suable agency of the City); Robinson v. City of New York, No. 99 Civ. 0505, 2002 WL 188353, at *2 (S.D.N.Y. February 6, 2002) (while NYPD may be sued for employment discrimination, it may not generally be named as suable defendant).

### III. CONCLUSION

For the reasons stated herein, the Court should dismiss Mayes's Section 1983 claims of false arrest against all Defendants for failure to file within the applicable statutory period. The Court should also dismiss Mayes's malicious prosecution claims against Defendant Buscarnera

13

for failure to add him to the complaint within the statutory period, against the City for failure to plead a constitutional violation for which relief may be granted, and against the NYPD because it is not a suable legal entity.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If Plaintiff does not have access to cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from Defendants' counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
       June 6, 2011

*/s/ James L. Cott*
JAMES L. COTT
United States Magistrate Judge

**Copies are hereby sent to the following via Regular Mail:**

Angelo Anthony Mayes
10-R-3541
Franklin Correctional Institute
62 Bare Hill Road, P.O. Box 10
Malone, NY 12953

Assistant Corporation Counsel Ryan G. Shaffer
The City of New York, Law Department
100 Church Street
New York, NY 10007

Pro Se Office - Room 230
Hon. Jed S. Rakoff